1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8
9
10

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. C |
| Plaintiff, | |
| v. | |
| $102,000.00 in United States Currency, more or less, and all proceeds therefrom, | VERIFIED COMPLAINT FOR FORFEITURE IN REM |
| Defendant. | |

11
12
13
14
15
16

COMES NOW, the United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and James M. Lord, Assistant United States Attorney for said District, and alleges:

I.

This is a complaint for the forfeiture in rem of $102,000.00 in United States currency, more or less, and all proceeds therefrom ("the defendant currency"), pursuant to 18 U.S.C. § 981(a)(1)(A), for violations of 18 U.S.C. §§ 1956(a)(1)(A) and 1956(a)(1)(B)(i).

II.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1345, and 28 U.S.C. § 1355.

VERIFIED COMPLAINT FOR FORFEITURE IN REM
US v. $102,000.00 in United States Currency - 1

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

III.

This Court has venue pursuant to 28 U.S.C. § 1395.

IV.

The defendant funds as described above are now and during the pendency of this action will be in the jurisdiction of this Court.

V.

From 2005 until July, 2008, Shawn Portmann (hereinafter "Portmann") was the Senior Vice President of Bank Home Loans, a residential lending division of Pierce Commercial Bank (hereinafter "PCB"). From July 2008 through 2009, Portmann continued to work in the mortgage industry. PCB sold mortgages originated by PCB Home Loans to secondary investors. Beginning around June 2009, Special Agents from the Federal Bureau of Investigations (FBI), US Postal Inspection Service, Housing and Urban Development-OIG, and Internal Revenue Service-CI (IRS-CI), began actively investigating the mortgage loan practices of PC Bank Home Loans. The investigation revealed that Portmann and the two other principals at PCB Home Loans had devised a scheme involving originating, processing and/or brokering mortgage applications with materially false representations to induce financial institutions to fund and/or purchase loans. Loan data from PCB, obtained during the above-mentioned investigation, identified approximately 11,442 mortgage loans originated by loan officers at PC Bank Home Loans, totaling more than $2.2 billion. Portmann was identified as the originating loan officer on approximately 5,253 loans, totaling more than $990 million. Loans brokered by Portmann account for nearly half, 46 percent, of PC Bank Home Loans' total loan volume. To date, based on interviews and a review of financial records, the investigation has revealed that over 50% of these transactions were fraudulent. A significant number of loan files contained misrepresentations, and fraudulent documentation. Portmann's scheme involved falsifying borrowers' income, forging or doctoring supporting documents, obtaining inflated appraisals, misrepresenting occupancy, and disregarding or falsely resolving underwriters' conditions. For each loan

VERIFIED COMPLAINT FOR FORFEITURE IN REM
US v. $102,000.00 in United States Currency - 2

1  file funded by PCB, Portmann caused PCB to wire the funds to the escrow company

2  handling the closing on the loan.

3                                                         VI.

4         Portmann's personal bank accounts, Bank of America linked checking account

5  *****9191, held in the name of Shawn Portmann, and savings account *****7466, held

6  in the name of both Portmann and his personal assistant "AB," were used in the scheme

7  to obtain funding of fraudulent mortgage loans for borrowers.  Specifically, Portmann

8  would, through "AB," obtain cashier's checks from the aforementioned Bank of America

9  accounts to improve the appearance of a borrower's financial condition.  The checks

10  would be presented as evidence that the debts would be paid.  The remitter on the

11  cashier's check named a mortgage loan borrower instead of the account holder(s),

12  Portmann or "AB."   Within a few days, the cashier's checks were re-deposited into one

13  of the two Bank of America accounts.  The endorsement on the back of the cashiers check

14  included a notation that they were "not used for intended purpose."  Between 2006 and

15  2009, 85 cashier's checks totaling more than $899,000.00 were purchased from and then

16  re-deposited into Bank of America accounts *****9191 and *****7466.

17                                                       VII.

18         Portmann and the other PCB Home Loans employees were compensated from

19  commissions generated by fees, rebates and Service Release Premiums (hereinafter

20  "SRP") from mortgage loans.  SRP is the payment received by financial institutions on

21  the sale of a closed mortgage to the secondary market; PCB retained 30 percent of SRP

22  and Portmann and PC Home loans received 70 percent.  Payments from PCB were

23  deposited to Portmann's Bank of America accounts numbers *****9191 and *****7466.

24  Between 2006 and 2008, Portmann deposited at least $547,443.00 to account number

25  *****9191 and at least $265,463.00 to account number *****7466 from payroll and

26  other disbursements from PCB.

27

28

VIII.

In about January 2010, during an interview of "AB," conducted by Special Agents from IRS-CI and the FBI and an Assistant United States Attorney, "AB" stated that she regularly withdrew cash from Portmann's savings accounts under Portmann's direction, placing the withdrawn funds in a safe in Portmann's house. In all, she withdrew about $500,000 which she always took to Portmann's house. "AB" tracked all of the funds contained in the safe and maintained a log to record currency added or removed. "AB" later identified the yellow sheets of paper contained in the trash bag handed over by "SS" and accompanying the $102,000.00 in United States currency as this log.

IX.

On or about March 3, 2010, "SS", through his attorney, turned over custody of the $102,000.00 in United States currency, contained in a trash bag, to a Special Agent from IRS-CI in Tacoma, Washington. Other contents of the trash bag included one empty Bank of America envelope with handwriting on it and several sheets of lined yellow legal-sized paper with handwriting.

X.

During an interview of SS, conducted by Special Agents from IRS-CI and the Federal Bureau of Investigation (hereinafter "FBI") and an Assistant United States Attorney on or about March 12, 2010, "SS" stated that Portmann had given him a backpack sometime in late January or early February 2010 containing a large sum of United States currency. According to "SS", Portmann had become aware that he was the subject of an ongoing fraud investigation and consequently asked "SS" to keep the United States currency at his home. Portmann told "SS" that he believed the FBI thought Portmann was a flight risk and because he had a lot of cash at home, he did not want the FBI to think he would use it to flee. Portmann told "SS" he could borrow some of the money if he wanted to. "SS" kept approximately $7,500.00 to pay bills. Through his attorney, "SS" turned over the entire remaining balance to IRS-CI agents on March 3, 2010.

VERIFIED COMPLAINT FOR FORFEITURE IN REM
US v. $102,000.00 in United States Currency - 4

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

### XI.

On or about March 4, 2010, IRS-CI Special Agents reviewed the contents of the trash bag. The defendant currency was contained in two separate packaged amounts of $100,000.00 and $2,000.00 in United States currency. The $100,000.00 in United States currency was packaged in ten bundles of $100 bills with each bundle containing $10,000. Each bundle was banded together with a currency strap and sealed in a plastic bag upon which was a small white sticker with a red strip. The sticker had three lines of text, reading from top to bottom "122908," "FRB-SEA," and "00002." This shrink wrapped packaging and bundled currency is consistent with the system used by the United States Federal Reserve Bank (hereinafter "FRB") when currency is shipped to banks. The remaining $2,000.00 of the defendant currency was contained within a Bank of America envelope.

### XII.

On or about March 5, 2010, Officer Tim Kroll of the United States Federal Reserve Bank ("FRB") in Seattle, WA, reviewed the photos of the $100,000 in currency and confirmed it appeared to be in FRB packaging. Officer Kroll stated that a bank would have to request currency from the FRB in order to have the funds available for a customer to withdraw, and that banks may choose to leave it in the FRB wrapping so that they don't have to recount it for their customers. Officer Kroll further stated that the defendant currency in question, as packaged and as tracked with the unique identification, reading from top to bottom, of "122908," "FRB-SEA," and "00002." would have been distributed to a bank in about March 2009.

### XIII.

On July 16, 2010, Special Agents from IRS-CI interviewed the assistant manger of the Puyallup, WA branch where the currency withdrawals from PORTMANN's account were conducted. The manager summarized the banks bulk cash procedures and stated that when the bank has a customer requesting bulk cash, that they order it from the local branch of the Federal Reserve Bank. The cash is usually received by the bank

VERIFIED COMPLAINT FOR FORFEITURE IN REM
US v. $102,000.00 in United States Currency - 5

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  within a week, depending on when it was ordered in relation to the banks weekly

2  scheduled FRB delivery.  When bulk cash is ordered the bank will leave it in the shrink

3  wrapped bundle they receive it in from the FRB.  When the customer picks up the cash,

4  the bank will either provide it to the customer in the shrink wrap, or break it out and count

5  it, whichever the customer requests.  According to the manger, the branch rarely orders

6  bulk cash in intervals of, or exceeding, $100,000, and recalled doing it on a few instances

7  for the same customer, Shawn Portmann.  She stated that the cash was usually ordered

8  and picked up by his assistant "AB", and the first time "AB" came to pick-up cash that

9  totaled over $100,000, the bank was concerned for her safety, and requested that

10  Portmann accompany "AB."  The manager further stated that Portmann instructed the

11  bank to leave the cash in the $100,000 shrink wrapped brick, so the teller handling the

12  transactions did not break it out and count it, but rather provided "AB" the brick.

13                                              XIV.

14        On about July 22, 2010, "AB," through her attorney, reviewed photographs of the

15  items obtained from "SS," which included three sheets of legal size yellow lined paper.

16  "AB" stated that the sheets of legal paper made up the currency log that she kept in a safe

17  located in Portmann's home.  The sheets are numbered 1, 2 & 3, starting in mid 2008.

18  According to "AB," the majority of the entries were made by her, but Portmann did enter

19  amounts into the log.  "AB" last saw the log when she made the entry of "$9000" on

20  12/2/09.  "AB" verified that all withdrawals from the bank accounts, cashing of

21  paychecks and/or other checks and entries to the log were made at the direction of

22  Portmann.  The log contained an entry of $100,000 on 3/31/09, which "AB" recalls that

23  the bank made Portmann personally pick-up.  However, "AB" went to the bank with

24  Portmann when he picked up the currency, and Portmann handed the $100,000 to her

25  outside the bank and she took it to the house and put it in the safe (increasing the balance

26  of currency in the safe, according to the log, from $455,446 to $555,446).  According to

27  "AB," Portmann had a key to the safe and accessed it whenever he needed cash, and

28  sometimes he personally wrote an entry on the log.  By directing "AB" to withdraw

VERIFIED COMPLAINT FOR FORFEITURE IN REM
US v. $102,000.00 in United States Currency - 6

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

1  currency from his bank account and put it into Portmann's safe, Portmann intended to

2  promote the wire fraud scheme by ensuring that the proceeds from the scheme were

3  available to him for his own use, and to conceal the nature and source of the wire fraud

4  proceeds by turning it into currency that he could spend without it being easily traceable

5  to the fraudulent scheme.

6                                    XV.

7        Bank of America records obtained during the course of the aforementioned

8  investigation reflect a withdrawal of $100,000.00 in United States funds from account

9  *****9191 on or about March 31, 2009. The log maintained by "AB" reflects, on March

10  31, 2009, the deposit into Portmann's safe of $100,000.00 in United States currency.

11                                   XVI.

12       By reason of the foregoing, the defendant currency is subject to forfeiture pursuant

13  to 18 U.S.C. § 981(a)(1)(A) as property directly traceable to property involved in money

14  laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A) and 1956(a)(1)(B)(i).

15       WHEREFORE, the United States requests that due process issue to enforce the

16  forfeiture of the defendant currency, that due notice be given to all interested persons to

17  appear and show cause why forfeiture of the defendant currency should not be decreed,

18  that the defendant currency be condemned as forfeited to the United States to be disposed

19  of according to law, and for such other and further relief as the Court may deem just and

20  proper.

21       DATED this ___ day of July, 2010.

22                                    Respectfully submitted,

23                                    JENNY A. DURKAN
                                      United States Attorney

24

25                                    JAMES M. LORD
                                      Assistant United States Attorney

26                                    United States Attorney's Office
                                      700 Stewart Street, Suite 5220

27                                    Seattle, Washington 98101-1271
                                      Phone: 206-553-2242

28                                    Fax:    206-553-6934
                                      E-mail: Jim.Lord@usdoj.gov

VERIFIED COMPLAINT FOR FORFEITURE IN REM
US v. $102,000.00 in United States Currency - 7

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

VERIFICATION OF COMPLAINT

STATE OF WASHINGTON )
                                              )        ss
COUNTY OF ___PIERCE___      )

I, Silvia Reyes, declare under penalty of perjury that the following is true and correct to the best of my knowledge:

I am Special Agent with the Internal Revenue Service - Criminal Investigations Division and am assigned to this case. I have read the attached Complaint and know the contents thereof; I have furnished the information contained in the Complaint based upon my own investigation and that of other reliable official Government sources; and, based on information and belief, the allegations contained in the Complaint are true.

SILVIA REYES
Internal Revenue Service - CID

SUBSCRIBED and SWORN to before me this __30th__ day of July, 2010, by Silvia Reyes

Print: _Kelly M Shirkey_
Notary Public in and for the
State of Washington, residing
at _Spanaway_
Expires: _7-24-2012_

VERIFIED COMPLAINT FOR FORFEITURE IN REM
US v. $102,000.00 in United States Currency - 8

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-7970

%JS 44  (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a)  PLAINTIFFS
United States of America

**DEFENDANTS**
$102,000.00 IN UNITED STATES CURRENCY, more or less

(b)  County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   King
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

(c)  Attorney's (Firm Name, Address, and Telephone Number)
James M. Lord, Assistant United States Attorney
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
(206) 553-2242, Facsimile: (206) 553-6934

Attorneys(If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☒ 1   U.S. Government Plaintiff
☐ 2   U.S. Government Defendant
☐ 3   Federal Question (U.S. Government Not a Party)
☐ 4   Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 690 Other | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | **PERSONAL INJURY** | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | ☐ 362 Personal Injury - Med. Malpractice | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 365 Personal Injury - Product Liability | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | **PERSONAL PROPERTY** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 370 Other Fraud | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 371 Truth in Lending | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 380 Other Personal Property Damage | | | |
| **CIVIL RIGHTS** | ☐ 385 Property Damage Product Liability | | | |
| ☐ 441 Voting | **PRISONER PETITIONS** | | | |
| ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 443 Housing/ Accommodations | **Habeas Corpus:** | | | |
| ☐ 444 Welfare | ☐ 530 General | | | |
| ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | | | |
| ☐ 446 Amer. w/Disabilities - Other | ☐ 540 Mandamus & Other | | | |
| ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 U.S.C. § 981(a)(1)(A) for violations of 18 U.S.C. §§ 1956(a)(1)(A) and 1956(a)(1)(B)(i)
Brief description of cause:
Civil Forfeiture of property traceable to Money Laundering

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE  July 50, 2010

SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____